# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **LOUIS BAXLEY, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| v. | ) Civil Action No. 2:20-cv-265-CLM |
| | ) |
| **JACKSON NATIONAL LIFE** | ) |
| **INSURANCE COMPANY,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM OPINION

Plaintiff Louis Baxley ("Baxley"), as co-executor of the Estate of James L. Smith, sues Defendant Jackson National Life Insurance Company ("Jackson") for breach of contract.[1] Baxley's claim arises out of Jackson's decision to pay the proceeds of two annuities held by James L. Smith ("Smith") to Smith's natural children rather than to the Estate. Jackson now moves for summary judgment. For the reasons explained within, the court will **GRANT** Jackson's motion.

## STATEMENT OF THE FACTS

Smith had two annuity policies with Jackson. For some time, both policies named Smith's Estate as the beneficiary. But on February 1, 2019, Smith mailed to

---

[1] The court previously dismissed Plaintiffs' negligence claim and Plaintiff Louis Baxley (in his individual capacity) and Rebecca Nichols' claims for breach of contract, leaving only the Estate's breach of contract claim (doc. 18). Jackson also filed a third-party complaint if the court denied its motion for summary judgment (doc. 22) but, as the court will discuss, the court needn't consider that complaint.

Jackson a Beneficiary Designation Supplement form ("BDS") that would change the beneficiary to his natural children: Elizabeth Frost ("Frost") and James L. Smith, Jr. ("Smith, Jr."). Two complications arose: (1) while Smith personally signed the form, Frost and Smith, Jr. did not, even though the form required it, and (2) the form did not reach Jackson until February 7, 2021, one day after Smith died.

Because the BDS form lacked Frost's and Smith, Jr.'s signatures, Jackson did not process the change. Instead, Jackson returned the form to Smith to address the deficiency, not realizing that Smith had died. When they received the form, Frost and Smith, Jr. signed it on the wrong line and sent it back to Jackson. Jackson received the form and processed the change, even though one of the policies required any changes to occur before the policyholder's death (the other policy states that beneficiary changes may take effect once recorded). Jackson then paid the proceeds to Frost and Smith, Jr.

Baxley filed this lawsuit after Jackson paid Frost and Smith, Jr. Jackson says that it received no notice of competing claims before paying the proceeds.

**STANDARD OF REVIEW**

In reviewing a motion for summary judgment, this court views the facts and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Cuesta v. Sch. Bd. of Miami-Dade Cty.*, 285 F.3d 962, 966 (11th Cir. 2002). Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). A genuine dispute of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

**ANALYSIS**

Baxley argues that Jackson wrongly changed the beneficiary for three reasons: (1) one of the policies prevented Jackson from changing the beneficiary after Smith's death; (2) Frost and Smith Jr. signed the BDS form on the wrong lines; and (3) Jackson knew that Smith lacked the mental ability to request the change. The court addresses each argument below.

**I.   Jackson properly accepted the change after Smith's death.**

1. Alabama law generally allows insurers to process a beneficiary change after the insured dies. *See McDonald v. McDonald*, 141 So. 38 (1924); *Coley v. Walker*, 655 So. 2d 1005 (Ala. Civ. App. 1994). But the parties agree that one of the two policies required that the BDS form be "received by the Company before the

applicable death," and the terms of a life insurance policy govern the method of changing its named beneficiaries. *Gibson v. Henderson*, 459 So. 2d 845, 847 (Ala. 1984). So the question here is whether Alabama law allowed Jackson to disregard the policy term that required receipt of the BDS form before Smith's death.

It does. Alabama law allows an insurer to waive strict compliance with policy requirements that govern the change of beneficiaries because those terms protect the insurer, not the insured or potential beneficiaries. *See Whitman v. Whitman*, 142 So. 413, 413–14 (Ala. 1932); *Missouri State Life Ins. Co. v. Robertson Banking Co.*, 134 So. 25, 27 (Ala. 1931). If the insurer decides to waive strict compliance with the policy's terms, "no one else" can complain about it. *See Robertson Banking Co.*, 134 So. 25 at 27. And it is undisputed that Jackson chose to waive the requirement that it receive the change form before Smith's death, so Alabama law says that Baxley (on behalf of the Estate) cannot complain about Jackson's decision.

2. To get around Jackson's waiver of the receipt requirement, Baxley cites the Alabama Supreme Court's 5-4 decision in *Gibson v. Henderson*, for the proposition that, for Jackson to be able to waive strict compliance with the policy, Smith must have "substantially complied" with the policy's requirements, which means that Smith "[had] done all that he could reasonably have done to effect the change." 459 So. 2d at 849. Baxley argues that, by failing to have his children sign the change form before he died, Smith did not substantially comply with the change form's

requirement that "**All irrevocable beneficiary(ies) must also sign this form on the appropriate line(s) on page 3.**" Doc. 41-1 at 6-8.

Jackson responds that Smith did "all that he could reasonably have done" to change his beneficiaries because Smith told his son (Smith, Jr.) that he wanted to change the beneficiaries; he signed the form in his son's presence; then he had his son mail in the change form. Doc. 45 at 9-10. So Jackson argues that Smith "substantially complied" as required by *Gibson*.

If the *Gibson* decision controlled this case, the court would agree with Baxley. As quoted above, the BDS form told Smith in bold letters that **"All irrevocable beneficiary(ies) must also sign the form**[.]" Doc. 41-1 at 6-8. The undisputed evidence shows that they did not. So, under *Gibson*, "the burden was on [Jackson] to show 'excusing circumstances'" for Smith's failure to have his children sign the form before his death. 459 So. 2d at 849. Jackson has not presented this evidence, nor could it (at least without a material dispute) because Smith Jr. testified that he filled out the form for his father and failed to sign the document as required because "apparently I didn't read it." Doc. 41-4 at 15-16. So *Gibson* would require the court to deny summary judgment. *See Gibson*, 459 So. 2d at 849 (reversing the grant of summary judgment for the insurer because the insurer failed to provide undisputed evidence that explained why the insured did not mail the change form before his death as required by the policy).

But thanks to *Murphy v. Gibson*, 465 So. 2d 373 (Ala. 1985), *Gibson's* substantial compliance rule doesn't apply here. In *Murphy*, the Alabama Supreme Court reaffirmed the pre-*Gibson* rule that "an insured may change his beneficiary without abiding by the specified requirements of his policy, which require that the change be noted thereon, if the insurer waives the requirement, and an interpleader by it is such a waiver." *Id.* at 376 (citing *Norton v. Norton*, 280 Ala. 307, 193 So.2d 750 (1967), and *Phillips v. Phillips*, 240 Ala. 148, 198 So. 132 (1940)). The supreme court affirmed the trial court's decision to affirm the insurer's award to the new beneficiaries, despite the insured's failure to follow all of the policy's terms, in part because "the trustee (tantamount to the insurer) interpleaded and was subsequently discharged without objection." *Id.*

In his concurrence, Justice Adams—who wrote the four-Justice dissent in *Gibson* the year before—noted that the supreme court had reverted to its original rule that the insurer can waive strict compliance with the policy's requirements for changing beneficiaries, and if it does, the trial court "is free to determine the beneficiary, based on a determination of the intention of the insured." *Id.* at 377-78 (Adams, J. concurring). *See also Coley*, 655 So. 2d at 1008 (discussing the interplay between *Gibson* and *Murphy*).

Applying the *Murphy* rule, the court finds that (1) Jackson accepted the requisite beneficiary signatures after Smith's death as satisfying the policy's

requirement and (2) Smith intended to change the beneficiaries to his children, as shown by the uncontroverted facts that he told Smith Jr. that was his intent; he had Smith Jr. print off and complete the change form for his signature; and after he signed the form, he had Smith Jr. mail it to Jackson. No reasonable juror could find otherwise. So Smith's failure to have his children sign the change form before his death does not negate Jackson's decision to accept the change

## II. Jackson properly accepted the beneficiaries' signatures.

Baxley next argues that Jackson wrongly accepted Smith Jr. and Frost's signatures. The BDS form asked for the beneficiaries' signatures, phone numbers, and dates of birth under their father's signature on page 3 of the change form (doc. 41-1 at 14), but Frost and Smith, Jr. instead signed the form on page 2 in another section that identified their names, addresses, and phone numbers, and dates of birth (doc. 41-1 at 13).

As discussed in part I, the court may affirm Jackson's decision to pay Smith Jr. and Frost if (a) Jackson waived strictly compliance with the proper placement of signatures and (b) Smith intended to name Smith Jr. and Frost as his beneficiaries. As also discussed in part I, no reasonable juror could find against Jackson on either of these issues, as the unconverted evidence shows both Jackson's waiver and Smith's intent to make his children the beneficiaries. So the beneficiaries' placement

of their signatures on the wrong line does not negate Jackson's decision to accept the change.

### III. Smith's proximity to death does not negate Jackson's decision to accept the change of beneficiaries.

The court explained in Parts I-II why Jackson's decision to pay Frost and Smith Jr. was appropriate under Alabama law and the policies' terms. Because Jackson's payment was "in accordance with the terms of the policy," Section 27-14-24 of the Alabama Code says that "such payments shall discharge the insurer from all claims under the policy or contract, unless, before payment is made, the insurer has received at its home office written notice by, or on behalf of, some other person that such other person claims to be entitled to such payment or some interest in the policy or contract." It is undisputed that no one mailed a written notice to Jackson claiming Smith's benefits before Jackson paid Frost and Smith, Jr., so Section 27-14-24 would generally shield Jackson from lawsuits like this one.

But there is a relevant exception: mental incapacity. In *Fortis Benefits Ins. Co. v. Pinkley*, 926 So. 2d 981 (Ala. 2005), the supreme court stated the following rule:

> Where an insurer, acting in good faith without any actual knowledge of the insured's mental incompetency, has recognized an apparently duly executed change of beneficiary and has paid the proceeds of the insurance to the substituted beneficiary, it is not liable to the original beneficiary when sued by him or her even though it is established that the insured was in fact incompetent and lacked the capacity to make the change of beneficiary. That is, the insurer is not under any duty to investigate the mental competency of the insured to change the

> beneficiary unless it knows of circumstances reasonably suggesting the probability of his or her mental incompetency.
>
> Similarly, an insurer is not required to investigate to determine whether a change of beneficiary had been procured by undue influence in the absence of knowledge of facts which would indicate that the change might have been so procured.

*Id.* at 988 (quoting 4 Lee R. Russ and Thomas F. Segalla, *Couch on Insurance* 3d § 60:77 (1997)).

Baxley argues that § 27-14-24 cannot protect Jackson from this lawsuit because Jackson knew or should have known that Smith was mentally incompetent to request a change on February 1st because (a) Smith was receiving hospice care on February 1st and (b) Smith died on February 7th. Doc. 44 at 27.

But Baxley presents no evidence that Smith was mentally incompetent when he signed the BDS form—much less evidence that Jackson was aware of Smith's mental incompetence. Alabama law requires courts to presume sanity and mental competency unless a party proves otherwise. *Fortune v. Boutwell*, 126 So. 2d 116 (Ala. 1960); *see also Troy Health and Rehab. Ctr. v. McFarland*, 187 So.3d 1112, 1119 (Ala. 2015). And the party seeking to prove that an individual lacked capacity to conduct business must go beyond showing "mere sickness," it must instead show "unsoundness of mind and incapacity to understand the business transacted." *Fortune*, 126 So.2d at 595. "[A]dvanced age and mental enfeeblement" alone does not meet this standard. *Id.*

Here, neither party has presented medical records or testimony that would prove a deterioration in Smith's mental state. And Baxley admitted in his deposition that he had no personal knowledge of Smith's mental state. Doc. 41-6, 46:6-8. With no such evidence, Alabama law requires the court to presume that Smith was mentally competent. And if the court must presume Smith was mentally competent, the court must also find that no reasonable juror could find that Jackson had actual knowledge that Smith was mental <u>in</u>competent. So § 27-14-24 protects Jackson against Baxley's claim under the policy.

## CONCLUSION

For the reasons stated above, the court will **GRANT** Jackson's motion for summary judgment (doc. 40). The court will enter a separate order carrying out this finding and dismissing this case with prejudice.

Because the court grants Jackson's motion summary judgment, it needn't consider Jackson's third-party complaint against Frost and Smith, Jr (doc. 22).

**DONE** on October 26, 2021.

_____
**COREY L. MAZE**
UNITED STATES DISTRICT JUDGE